UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-80649-CIV-MARRA

STEVEN BLENDER,

 Plaintiff,
vs.

AXA EQUITABLE LIFE
INSURANCE COMPANY,

 Defendant.
_____/

## OMNIBUS OPINION AND ORDER

  This cause comes before the Court upon Defendant's Motion for Summary Judgment (DE 18), and Plaintiff's Motion to Consider his response to Defendant's Motion for Summary Judgment as Plaintiff's Cross Motion for Summary Judgment (DE 28). The Motions are briefed and ripe for review. The Court has considered the parties' arguments and is otherwise advised in the premises.

## I. Background

  This is an action for a breach of contract and bad faith failure to pay benefits. Compl. (DE 1-2). Plaintiff initiated this case in the state court, and Defendant removed it on the basis of diversity jurisdiction. (DE 1). The bad faith claim has been abated pending resolution of the breach of contract count. (DE 11).

  Plaintiff Steven Blender ("Dr. Blender" or "Plaintiff") was a dermatologist. (DE 18-1, -2). In 1981, Dr. Blender obtained two disability insurance policies from Defendant AXA Equitable: policy number M 81 701 710 was for $1,750 in monthly income for total disability, and policy number MN 81 710 253 was for $6,700 in monthly income for total disability ("Policies"). *Id.* The terms of the Policies are the same in all other relevant respects. *Id.* The Policies provided lifetime

benefits for total disability commencing before age 50 resulting from sickness, and benefits to age 65 for disability resulting from sickness commencing at age 50 or later. Policies, p. 3 (DE 18-1, -2).

Under the Policies,

Total disability means the complete inability of the Insured, because of injury or sickness, to engage in the Insured's regular occupation, except that after twenty-four months of continuous total disability, *total disability shall then mean the complete inability of the Insured to engage in any occupation for which the Insured is reasonably fitted by education, training, or experience, provided, however, that total disability will not be considered to exist for any period during which the Insured is not under the regular care and attendance of a physician*, except in cases of presumptive total disability.

PRESUMPTIVE TOTAL DISABILITY. Presumptive total disability means the entire and irrecoverable loss occurring while this policy is in force of 1) the sight of both eyes, or of 2) the use of both hands or both feet, or of 3) the use of one hand and one foot.

*Id.*, p. 2 (DE 18-1, -2) (emphasis supplied).

Dr. Blender does not allege that he suffered from presumptive total disability. Pl.'s Resp. to Def.'s Req. for Admis., ¶ 4 (DE 18-3).

Further, the Policies provide:

NOTICE OF CLAIM. Written notice of claim must be given to The Equitable within thirty days after the occurrence or commencement of any loss covered by this policy, or as soon thereafter as is reasonably possible. Subject to the qualifications set forth below, *if the Insured suffers total disability for which benefits may be payable for at least two years, the Insured shall, at least once in every six months after having given notice of claim, give to The Equitable notice of continuance of said disability, except in the event of legal incapacity.* The period of six months following any filing of proof by the Insured or any payment by The Equitable on account of such claim or any denial of liability in whole or in part by The Equitable shall be excluded in applying this provision. Delay in the giving of such notice shall not impair the Insured's right to any benefits which would otherwise have accrued during the period of six months preceding the date on which such notice is actually given.
. . .

PROOF OF LOSS. Written proof of loss must be furnished to The Equitable at its

> Home Office in case of claim for loss for which this policy provides any periodic payment contingent upon continuing loss, within ninety days after termination of the period for which The Equitable is liable and, in case of claim for any other loss, within ninety days after the date of such loss. *Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity, later than one year from the time proof is otherwise required.*

*Id.*, p. 6 (DE 18-1, -2) (emphasis supplied).

Dr. Blender has never been declared legally incompetent. Blender Dep., p. 19 (DE 18-5). The parties are in agreement that during the relevant time period, the requirement to provide forms proving continuance of disability (herein "Continuance of Disability forms") was relaxed, and Plaintiff was only required to comply with this provision annually. *Id.*, pp. 25-26.

The Policies were guaranteed renewable to age 65, *see* Policies, p. 1 (DE 18-1, -2), and contained the following provision:

> WAIVER OF PREMIUM. If total disability of the Insured occurs while this policy is in force and continues for ninety days, The Equitable will refund any premiums which became due and were paid during that total disability and *will waive all premiums coming due during the period that total disability continues, even if total disability continues beyond the maximum benefit period for total disability shown on page three.* The premium to be waived will be the premium according to the mode of payment in effect when total disability began. *The policy will continue in force until but not including the premium due date immediately following the end of total disability.* If total disability ends before age 65, the Insured will have the right to resume payment of premiums at the same rate that would have been payable if no disability had occurred.

*Id.*, p. 5 (emphasis supplied).

The insured had to be regularly and gainfully employed in his occupation on a full-time basis at the age of 65 to renew the Policies thereafter. *Id.*, Endorsement, sec. B(1).

Plaintiff became disabled in 1992. Blender Aff., ¶ 4 (DE 24-1). Specifically, Dr. Blender

"has not worked since April 1992 due to reports of depression, anxiety, delusions and narcissism." Fleming Report, Def.'s Ex. 4 (DE 18-4). Dr. Blender was born on August 5, 1942, turned 50 on August 5, 1992, and turned 65 on August 5, 2007. *See* Pl.'s Resp. to Def.'s Req. for Admis., ¶ 18 (DE 18-3).

Plaintiff received benefits for total disability under the Policies from 1992 through May of 2008. Blender Aff., ¶ 5 (DE 24-1). There is no disagreement that Plaintiff submitted his Continuance of Disability forms regularly at least through May of 2005. (DE 18-10). Dr. Blender contends that he sent the form in 2007, *see* Blender Aff., ¶ 12 (DE 24-1), but Defendant disputes this because no copies were discovered. Dr. Blender alleges that he suffered an exacerbation of his disease between December, 2007 and December, 2008, *see* Blender Aff., ¶ 7 (DE 24-1), and admits that he did not submit Continuance of Disability forms in 2008 and 2009, *see* Blender Dep., p. 38 (DE 18-5).

Plaintiff saw Dr. Agresti, a psychiatrist, from 1998 until February of 2008. Agresti Aff., ¶ 2 (DE 24-2). Dr. Agresti states that during this entire period, Dr. Blender was "totally and permanently disabled from practicing medicine." *Id.*, ¶ 3. Further, in February of 2008, Dr. Agresti discharged Plaintiff as a patient because he was certain that "Dr. Blender could not be rehabilitated to return to practice," and because "any further psychiatric treatment of him would be futile." *Id.*, ¶ 4.

After February of 2008, Dr. Blender saw the following physicians:

- Dr. Wingkun, neurologist, on 12/22/09; 12/28/09; and 1/4/10;
- Dr. Kaye, endocrinologist, on 8/25/10; 8/30/10; 9/2/10; 9/17/10; 11/8/10; 11/17/10; 2/10/11; 3/10/11; 3/17/11; and 4/29/11;
- Dr. Miller, cardiologist, at the Cleveland Clinic, on 9/9/10; 1/27/12; 2/29/12; 3/8/12; 3/28/12; 6/27/12; 9/9/12; and 12/18/12;

- Dr. Streichenwein, psychiatrist, on 11/29/09;
- Dr. Ray, cardiologist, on 2/9/09;
- Dr. Virshup, rheumatologist, on 12/29/09;
- Dr. Daubert, ophtalmologist, on 12/11/08; 12/29/08; and 1/9/09.

Blender Aff., ¶ 14 (DE 24-1).

On August 31, 2010, Dr. Blender began seeing Dr. Appleton, a psychiatrist. Appleton Dep., p. 7 (DE 18-7). On September 27, 2010, Dr. Appleton provided Defendant's claims processor his report, in which he specified that Dr. Blender was "still, in [Dr. Appleton's] opinion, totally disabled from any occupation from the psychiatric point of view." Psychiatric Report, Pl.'s Ex. 4 (DE 24-4). Among other diagnoses, Dr. Appleton defined Plaintiff's condition as a "Major Depressive Disorder, Recurrent Type, Severe Severity, Panic Disorder with Agoraphobia, R/O Post Traumatic Stress Disorder, R/O Generalized Anxiety Disorder." *Id.* Currently, Plaintiff sees Dr. Appleton every six months. Blender Dep., p. 97 (DE 18-5).

In this action Plaintiff is seeking benefits from May, 2008 forward, and contends that he is entitled to lifetime payments. Compl. (DE 1-2). Defendant's position is that Dr. Blender was not entitled to benefits under the Policies after he turned 65. Defendant contends that Dr. Blender violated the terms of the Policies when he failed to provide the Continuance of Disability forms from 2005 until 2010, and failed to remain under "the regular care and attendance of a physician" from 2007 or 2008 until 2010. As a result, according to the Defendant, Plaintiff ceased to be disabled under the Policies, the Policies terminated and could not be renewed because Plaintiff was not employed in his occupation when he turned 65. However, Defendant stresses that, even though the Continuance of Disability forms stopped in 2005, Defendant continued to attempt to locate and contact Plaintiff through at least September 12, 2008 when Defendant finally closed Plaintiff's claim.

5

Def.'s Ex. 14-16 (DE 18-14 – 16).

On October 11, 2013, Plaintiff filed his Motion to Consider Plaintiff's Response to Defendant's Motion for Summary Judgment as Plaintiff's Cross Motion for Summary Judgment. (DE 28). Defendant objects because the deadline for filing dispositive motions passed on July 10, 2013, *see* DE 13, and disputes the merits of Plaintiff's argument.

## II. Legal Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electronic Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must

support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson*, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249–50 (internal citations omitted).

### III. Discussion

**1. Choice of law**

Because jurisdiction in this case is premised on diversity, the court must use the choice-of-law rules of the forum jurisdiction to determine the governing state law. *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1515 (11th Cir. 1997). Florida, the forum state, applies the rule of *lex loci contractus* to contracts. *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006). With respect to insurance contracts it states that the law of the jurisdiction where the contract was executed governs. *Id.*; *LaFarge Corp.*, 118 F.3d at 1515; *Nat'l Fire & Marine Ins. Co. v. Adoreable Promotions, Inc.*, 451 F. Supp. 2d 1301, 1306 (M.D. Fla. 2006).

Here, Plaintiff lived in Florida when he obtained the Policies. (DE 18-1, -2). Also, the parties rely on cases that apply Florida law. Thus, the Court concludes that Florida law governs.

**2. Defendant's Motion for Summary Judgment**

The issue is whether Dr. Blender is barred from recovery of benefits because of his alleged failures to comply with the provisions of the Policies requiring Plaintiff to provide proof of continuing disability and to remain under the care of a physician. This requires the Court to construe the Policies.

Interpretation of an insurance contract is a question of law. *Gulf Tampa Drydock Co. v. Great Atl. Ins. Co.*, 757 F.2d 1172, 1174 (11th Cir. 1985). In Florida, insurance policies are construed "in accordance with the plain language." *Chandler v. Geico Indem. Co.*, 78 So. 3d 1293, 1300 (Fla. 2011), reh'g denied (Jan. 23, 2012) (quoting *Auto–Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla.2000)). "If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the another limiting coverage, the insurance policy is considered ambiguous." *Auto-Owners Ins. Co.*, 756 So. 2d at 34. Ambiguous policy provisions are interpreted liberally in favor of coverage. *Id.* Likewise, conflicting policy provisions are to be interpreted in favor of maximum coverage. *Dyer v. Nationwide Mut. Fire Ins. Co.*, 276 So.2d 6, 8 (Fla. 1973); *Aromin v. State Farm Fire & Cas. Co.*, 908 F. 2d 812, 813 (1990). Coverage exclusions are interpreted strictly against the insurer. *Auto-Owners Ins. Co.*, 756 So. 2d at 34. On the other hand, "in construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." *Id.*

**a. Entitlement to benefits**

Because the parties agree that Defendant has paid Plaintiff's benefits through the age of 65, the threshold question is whether a genuine issue of material fact exists with respect to Plaintiff's entitlement to any benefits beyond this age. Defendant's own evidence suggests that Dr. Blender

became disabled in April of 1992. *See* Fleming Report, Def.'s Ex. 4 (DE 18-4). Because Plaintiff turned 50 years old in August of 1992, and the terms of the Policies provide for lifetime benefits for disabilities commencing before age 50, there is a genuine issue of material fact with respect to Plaintiff's entitlement to lifetime benefits. The next question is whether Plaintiff's alleged violations of the "proof of loss," "notice of claim," and "care and attendance" provisions bar his recovery.

### b. "Notice of claim" and "proof of loss" provisions

Both the "notice of claim" and "proof of loss" clauses of the Policies require Plaintiff to submit periodic Continuance of Disability forms. *See* Policies, p. 6 (DE 18-1, -2). Proof of loss and notice of loss provisions are designed to help the insurer in investigating claims, and therefore late notice cases may be applied to late proof of loss fact patterns. *Allstate Floridian Ins. Co. v. Farmer*, 104 So. 3d 1242, 1249-50 (Fla. 5th DCA 2012). Typically, the determination whether notice was timely is a factual question. *Yacht Club on the Intracostal Condo. Ass'n, Inc. v. Lexington Ins. Co.*, 10-81397-CV, 2013 WL 1932152, at *4, – F. Supp. 2d – (S.D. Fla. May 10, 2013). However, a finding of untimeliness does not end the inquiry; it only creates a presumption that the carrier was prejudiced, which the insured can rebut. *Bankers Ins. Co. v. Macias*, 475 So. 2d 1216, 1218 (Fla. 1985); *Farmer*, 104 So. 3d at 1249-50; *Lane v. Provident Life & Accident Ins. Co.*, 178 F. Supp. 2d 1281, 1287 (S.D. Fla. 2001).

Here, Plaintiff was obligated to provide the Continuance of Disability forms annually. While there is a dispute as to whether Plaintiff stopped submitting the forms in 2005 or in 2007, Plaintiff stated that he did not submit any notice of his condition in 2008 and 2009. Blender Dep., p. 38 (DE 18-5). However, even assuming without deciding that this was not timely under the terms of the Policies, Plaintiff has raised a genuine issue of material fact as to whether the presumption of

prejudice has been rebutted. There is evidence supporting Plaintiff's contention that he has been disabled due to a psychiatric condition since 1992. *See* Fleming Report, Def.'s Ex. 4 (DE 18-4). Dr. Agresti, his long-time psychiatrist, thought that Plaintiff could never improve. Agresti Aff., ¶ 3 (DE 24-2). According to Dr. Appleton, Dr. Blender still remained disabled and unable to engage in any occupation in 2010. Psychiatric Report, Pl.'s Ex. 4 (DE 24-4). There is also evidence suggesting Plaintiff's psychiatric condition only worsened between 2007 and 2008, which he alleges contributed to his non-compliance with the requirements of the Policies. Blender Aff., ¶ 7 (DE 24-1). Additionally, even though Defendant argues that the Continuance of Disability forms stopped in 2005, it paid benefits through May of 2008. Thus, there is an issue of fact as to whether Plaintiff was unable to submit proof of his disability for the years in question and whether Defendant was prejudiced by the lack of proof. *Cf. Socas v. Nw. Mut. Life Ins. Co.*, 829 F. Supp. 2d 1262, 1275 (S.D. Fla. 2011) (disability insurer was prejudiced by a ten-year delay in notice and submission of the proof of loss because relevant medical records were destroyed).

Lastly, Defendant argues that the "proof of loss" provision requires the periodic notice of continuing loss to be provided no later than one year from the time such notice was required. *See* Policies, p. 6 (DE 18-1, -2). Because Plaintiff failed to provide the Continuance of Disability forms for at least two years, Defendant contends it is entitled to summary judgment. Defendant argues that the language of the "proof of loss" provision of the Policies was incorporated nearly verbatim from the Florida statutory requirement set forth in Fla. Stat. § 627.612.[1] Therefore, Defendant asserts that

---

[1]This statute provides:

The contract shall include the following provision:
"Proof of Loss: If the policy provides for periodic payment for a continuing loss, written proof of loss must be given the insurer within 90 days after the end of each period for which the insurer is liable. For any other loss, written proof must be given within 90 days after such loss. If it was not reasonably possible to give written proof in the time required, the insurer shall not reduce or deny the claim for this reason if the proof is filed as soon as reasonably possible. In any event, the proof

the one year limitation should be construed strictly and not consistent with the general principles of insurance policy interpretation. Defendant, however, cites no cases denying benefits solely on the basis of a violation of section 627.612 of the Florida Statutes. Moreover, as discussed previously, Plaintiff has raised a genuine issue of material fact with respect to prejudice. Therefore, Defendant has not established as a matter of law that Plaintiff is barred from recovery because of the violation of the "proof of loss" and "notice of claim" provisions of the Policies.

### c. "Care and attendance" clause

The final question is whether there is an issue of material fact with respect to Plaintiff's alleged violation of the clause requiring him to be under the regular care and attendance of a physician, and whether Plaintiff's alleged breach of the "care and attendance" provision precludes him from being entitled to benefits. "Under Florida law, . . . 'care and attendance' clauses are construed liberally in favor of coverage." *Kirkland v. Guardian Life Ins. Co. of Am.*, 3:06-CV-107 (CDL), 2008 WL 1990340 (M.D. Ga. May 5, 2008) aff'd, 352 F. App'x 293 (11th Cir. 2009). Further, if "continued treatment would be useless," a "care and attendance" provision need not be enforced. *Fritz v. Standard Sec. Life Ins. Co. of New York*, 676 F.2d 1356, 1358 (11th Cir. 1982) (applying Florida law).

Here, Dr. Agresti opined that Plaintiff's condition could not improve. Agresti Aff., ¶ 3 (DE 24-2). Further, Plaintiff alleges that his illness only worsened between 2007 and 2008. Blender Aff., ¶ 7 (DE 24-1). Also, there is evidence that Plaintiff began feeling better after he started seeing Dr. Appleton. Steven Laurence Blender, M.D., Ph.D., Social and Medical History, September 2007 -

---

required must be given no later than 1 year from the time specified unless the claimant was legally incapacitated."
Fla. Stat. Ann. § 627.612 (West).

11

September 2010, Def.'s Ex. 23 (DE 18-23).[2] Therefore, there is a genuine issue of material fact with respect to whether continued treatment of Plaintiff's condition would be useless, and whether the "care and attendance" provision should be enforced.

The *Socas* case, upon which Defendant relies heavily, is distinguishable. There, the "care and attendance" provision was enforceable because plaintiff's physician testified that reaching maximum medical improvement did not mean that further treatment would be completely useless. 829 F. Supp. 2d at 1267. Additionally, the situation there was complicated by the fact that plaintiff was not under care of a licensed physician for approximately 9 years, as well as by the fact that plaintiff filed the claim approximately 10 years after she sustained the injury. *Id.* In contrast here, there is no dispute as to the timeliness of Plaintiff's claim, and there is evidence that Plaintiff has been treated by a licensed psychiatrist for at least a decade without improvement, *see* Agresti Aff. (DE 24-2).

**3. Plaintiff's Motion to Consider Plaintiff's Response as Cross Motion for Summary Judgment**

Defendant does not dispute that the Court has the power to grant summary judgment to the nonmovant. *See* Fed. R. Civ. P. 56(f) ("After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant"). However, Defendant correctly points out that the deadline for filing dispositive motions was set for July 10, 2013, *see* DE 13. Plaintiff did not move until October 11, 2013 to consider his August 12, 2013 Response as a Cross Motion for Summary Judgment. Therefore, Plaintiff's request is untimely. Plaintiff provides no explanation for his failure to timely file a motion for summary judgment.

---

[2] The document entitled "Steven Laurence Blender, M.D., Ph.D., Social and Medical History, September, 2007 - September, 2010" does not contain a handwritten signature, but Dr. Blender's name is typed at the end identifying him as the author. The statement is stamped with the Disability Management Services stamp. No admissibility objections have been raised with respect to this document.

However, even if this issue is overcome, granting Plaintiff summary judgment is not proper. For the reasons described above, there are genuine issues of material facts with respect to whether Plaintiff was unable to submit his Continuance of Disability forms for the period in question, whether Defendant was prejudiced by lack of proof, and whether Plaintiff's continued treatment would be futile.

## IV. Conclusion

Accordingly, Defendant's Motion for Summary Judgment (DE 18) and Plaintiff's Cross Motion for Summary Judgment (DE 28) are **DENIED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 9th day of December, 2013.

_____
KENNETH A. MARRA
United States District Judge